KIVKO, P. J, and MOSER, J.,
—At the municipal election held in this county on November 7, 1967, plaintiffs in this action of manamus sought election to various county offices, as fol *179 lows: county commissioner, William H. Rumberger, Oscar E. Kehler and Lawton W. Shroyer; sheriff, Philip A. Zerbe, and treasurer, W. Fred Kohler. At no time subsequent to that election was any question raised regarding the computation of votes cast for William H. Rumberger, Lawton W. Shroyer, Philip A. Zerbe or W. Fred Kohler, nor was there any dispute concerning their election or their right to their respective offices.
Immediately after the election, however, a controversy did arise as to whether Oscar E. Kehler or one of his opponents, Lawrence Williams, was the successful candidate for one of the county commissioner posts. The dispute extended to the disposition of challenges to numerous absentee ballots, and the recount, revision and correction of the vote tabulations of many election districts, resulting ultimately in an appellate court decision on May 9, 1969, favoring Oscar E. Kehler.
Pending the final disposition of this litigation, none of the elected county officers was issued a certificate of election. The certificates were issued on May 12, 1969, immediately following the Supreme Court decision. Subsequent to their certification, the five plaintiffs took the oath of office, filed the necessary bonds and have continuously discharged the duties of their respective offices since that time.
On December 10, 1969, plaintiffs submitted to Northumberland County Controller Louis Horvath their invoices claiming salaries for their respective offices for the period from January 1, 1968, to May 15, 1969, computed according to the salary schedule provided by the Act of January 25, 1966, P. L. (1965) 1556, less deductions, in the claims of Kehler, Kohler and Zerbe, for payments made to them during this *180 period as hold-over officers. On January 12, 1970, the controller, relying on the legal opinion furnished by the solicitor for his office, refused to approve the claims.
On March 11, 1970, plaintiffs filed their complaint in mandamus against the controller praying this court to enter judgment against him and to command him to approve the invoices. The controller filed a responsive answer on March 16, 1970. Counsel for the parties filed a stipulation dated September 16, 1970, setting out the admitted facts surrounding the controversy. On October 26, 1970, counsel for plaintiffs filed a motion on their behalf, pursuant to Pa. R. C. P. 1098, seeking summary judgment in favor of plaintiffs. Counsel for the parties appeared before the court on November 16, 1970, at which time they presented oral arguments and submitted written briefs on the motion for summary judgment, raising the issues to be decided in this opinion.
Because of some factual variations in these claims, we shall first consider the claims of the county commissioners, Rumberger, Shroyer and Kehler.
The county commissioners axe constitutional officers. The same is true of the sheriff and the county treasurer. Section 1 of article XIV of the Constitution of 1874, as amended, declares that “County officers shall consist of sheriffs, . . . commissioners, treasurers, . . . and such others as may from time to time be established by law.” Section 2 of the article directs that “County officers shall be elected at the municipal elections and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified . . .” Section 7 of the article provides that “Three county commissioners . . . shall be elected in the year one thousand nine *181 hundred and eleven and every fourth year thereafter; and in the election of said officers each qualified elector shall vote for no more than two persons, and the three persons having the highest number of votes shall be elected . . .” Similar provisions are contained in sections 401 and 501 of the County Code of August 9, 1955, P. L. 323, 16 PS §§401, 501.
Section 7 deals at length with election to the board of county commissioners and filling vacancies therein for the purposes of encouraging the initial representation of both major political parties on the board of county commissioners: Commonwealth v. Jennings, 409 Pa. 513, (1963). However, there being no constitutional or statutory provision for determining which of the three predecessors in the office of county commissioner is the predecessor of a particular commissioner-elect, it becomes necessary not only to elect three commissioners, but also to have the three commissioners so elected qualify as a board or unit. The Constitution requires that the board of county commissioners consist of three commissioners. If a commissioner-elect refuses to qualify and accept office, or if he dies before assuming office, a vacancy is created that may be filled in the manner provided by law: Commonwealth v. Wise, 216 Pa. 152 (1907).
But no vacancy exists where a commissioner-elect is willing and able to qualify and accept office but the determination of his identity is delayed by an election dispute. Rumberger and Shroyer were elected by clear majorities and demanded the right to be certified and to serve. However, we know of no constitutional or statutory provision which would have permitted them to serve on the constitutionally mandated three commissioner board until such time as the identity of the third commissioner-elect was determined in the outcome of the election dispute. Pending that *182 determination, the predecessor board of three county commissioners held over as a board of county commissioners as directed in section 2 of article XIV, “until their successors shall be duly qualified.”
Kehler, a member of the predecessor board, continued to serve as a member of the hold-over board. As such, he continued to receive the same salary which attached to the office when he assumed it in January, 1964. This was governed by the Act of June 25, 1947, P. L. 972, as last amended by the Act of September 8, 1959, P. L. 819, 16 PS §11071, which provided an annual salary for county commissioners in a fifth class county of $8,500. This act, however, was repealed by section 2 of the Act of January 25, 1966, P. L. (1965) 1556, which added a new section 1552 to the County Code, 16 PS §1552. This increased the annual salary of county commissioners to $10,200 and became (16 PS §1555-3) “effective and applicable to all . . . (such) officers who shall be elected or appointed on or after the first Monday of January, 1966.”
Kehler contends that the Act of 1966 was in effect on November 7, 1967, when he was elected county commissioner and that, therefore, he is entitled to the difference between what he should have been paid under that act and what he actually received under the 1947 Act. This covers a period from January 1, 1968, to May 15, 1969. The difference amounts to the sum of $2,337.72. We agree with this contention. The certificate, although issued to him on May 12, 1969, was for the term of office which began the first Monday of January 1968. The Act of 1966 states that it is “effective and applicable to all . . . (such) officers who shall be elected on or after the first Monday of January, 1966.”
*183 In Goodwin v. Allegheny County, 182 Pa. Superior Ct. 28 (1956), the issue was the applicability of the Act of December 22, 1955, P. L. 788, which provided an increase in salaries of county officers, in the light of article III, sec. 13 of the Constitution, which prohibits the increase or decrease in the salary or emoluments of a public officer after his election or appointment. The court said:
“Article XIV, Section 2 of the Pennsylvania Constitution . . . provides that ‘County officers shall be elected at the municipal elections . . .’ Although there may be delays in the determination of the successful candidate, the fact remains that the officer is elected on the day the ballots are cast, notwithstanding that he does not take his oath or assume the duties of his office until a later date.”
Rumberger and Shroyer were newly elected county commissioners. They won by clear majorities. They requested and demanded certification and were refused for reasons previously stated. The issue posed by their salary claims is whether they may be denied the salary attached to their office for the time they were deprived of the office under the circumstances here present.
An analogous situation was presented in Rink v. The City of Philadelphia, 15 W.N.C. 345 (1884), affirmed by the Supreme Court in 17 W.N.C. 136, 1 Sadler 390 (1886). In an election for magistrate of the City of Philadelphia held on February 17, 1880, the computation of the returns indicated that John Rink lost the office to his opponent, Robert Barr, by 15 votes. A certificate of election was issued to Barr who took the oath of office and gave bond and on March 16, 1880, was commissioned by the Governor to be a magistrate for a term of five years, begin *184 ning the first Monday of April 1880. On March 17, 1880, Rink filed a petition contesting the election. After almost three years of litigation, the lower court sustained Rink’s contest and declared him elected. This was sustained on appeal.
Rink then sued the City of Philadelphia to recover the salary for the three-year period that he was deprived of the office notwithstanding that the city had paid practically all of it to Barr. The lower court entered judgment in plaintiff’s favor. “(The) plaintiff,” it said, “was the de jure officer, whose title dated back to the time when he and not Barr was elected. ... It was contended that because he had not taken the oath of office and entered the necessary security, he was not duly qualified, and therefore could not recover in this amount ... If there ever was a cause in which ‘prevention is equivalent to performance’ this is that case.”
On appeal, the judgment was affirmed. The Supreme Court, in an en banc opinion, stated:
“That decree (of the court below) established the right of the defendant in error (Rink) to the office and all the emoluments thereof, from the time his term legally commenced. It is no answer to say that he did not then take the oath or give the bond. He was denied the privilege of doing either. If he had gone through the form of then executing the papers, no effect could have been given to them prior to the decree in his favor. He was not kept out of the office by reason of any such ommission ...”
In Jones v. Dusman, 246 Pa. 513 (1914), in which the Rink case was cited with approval, the court stated:
“. . . this Court has held . . . with respect to public office, that the salary and emoluments allowed attach to the office itself, and not to the individual *185 discharging the duties of the office, except as he is an officer de jure.”
We believe that the facts and principles of the Rink case are applicable to Rumberger and Shroyer and that they are entitled to their respective salary claims of $14,025.
Kohler, at time of his election as county treasurer on November 7, 1967, was serving as a county commissioner. He continued to serve in that office as a member of the hold-over board until after he received his certificate of election as treasurer on March 12,1969.
Kohler, like Kehler, received a salary as a member of the hold-over board under the Act of June 25, 1947, P. L. 972. He contends that he is entitled to have his salary computed from January 1, 1968, to May 15, 1969, on the basis of the salary he is currently receiving as county treasurer under the revised salary schedule provided by the Act of January 25, 1966. The difference amounts to $1,512.72.
Kohler, as a hold-over member of the board, was performing an essential county service: York County v. Small, 1 W. & S. 315 (1841). His inability to obtain an earlier certification as treasurer was not attributable to any act of omission on his part. For the reasons submitted in our conclusion on the claims of the commissioners, Kohler’s claim is valid and should be paid.
This leaves for consideration the claim of Zerbe, who held over as sheriff and was paid the salary attached to that office under the Act of 1947 cited above until May 15, 1969, when, after having been issued a certificate of election as sheriff, he began to receive the salary for the office provided under the salary schedule of 1966. His claim for the dif *186 ference to which he alleges he is entitled amounts to $2,200.11.
His failure to receive an earlier certificate of election was not tied directly to the contingency that arose out of the county commissioner election contest. It was indirectly. The certificate was refused prior to the final resolution of the contest under the provisions of section 1308(e) of the Election Code, 25 PS §3146.8(e) relating to the suspension in the canvassing and computation of absentee ballots pending the final determination of all appeals. When his commission was issued by the Governor, it was for a term of four years computed from the first Monday of January, 1968.
For the reasons assigned our conclusions on the other claims, we hold the claim of Zerbe valid.
We therefore enter the following
ORDER
And now, December 31, 1970, the motion of counsel for plaintiffs for summary judgment in their favor and against defendant is hereby sustained, and defendant, Louis Horvath, County Controller, is hereby directed to approve the invoices presented by plaintiffs for salaries as county officers during the period from January 1,1968 to May 15,1969 as follows:
To William J. Rumberger, Commissioner, $14,025.
To Lawton W. Shroyer, Commissioner, $14,025.
To Oscar E. Kehler, Commissioner, $2,337.72.
To W. Fred Kohler, Treasurer, $1,512.72.
To Philip A. Zerbe, Sheriff, $2,200.11.