James W. WALLIS, Chairman, Mt. Zion High School Trustees, Olin C. Johnson, Sr., W. F. Lambert, Quinton Nagg, Ollie Smith, M. G. Gresham, C. E. Boatright

v.

E. M. BLUE, County School Superintendent, Carroll County, Georgia, J. C. Brown, Chairman, Carroll County Board of Education, Percy Johnson, Member Carroll County Board of Education, Larry Staples, Member Carroll County Board of Education, Dr. James A. Bivins, Member Carroll County Board of Education, C. H. King, Member Carroll County Board of Education, John Sims, Director, State School Building Authority, Ben Fortson, Secretary of State, State of Georgia.

Civ. A. No. 10598.

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 8, 1967.

C. C. Perkins, Carrollton, Ga., for plaintiffs.

Tisinger & Tisinger, Carrollton, Ga., for defendants.

Before BELL, Circuit Judge, and HOOPER and SMITH, District Judges.

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which the plaintiffs as residents of the Carroll County, Georgia, school district, seek to enjoin the defendant members of the Carroll County Board of Education and its Superintendent from carrying out a plan of consolidation which would result in the closing of the Mt. Zion High School and other schools located in the community in which all plaintiffs reside. Defendants Sims and Fortson are state officials who have functions in connection with the issuance of commissions to the School Board and with the State School Building Authority which would be involved in the construction of a new consolidated high school, if the plan of consolidation is not enjoined.[1]

According to all counsel, this is a local school controversy which has raged for almost 15 years within Carroll County. As a result, it has been the subject of innumerable school board meetings, newspaper editorializing, and considerable bitterness between the opposing factions. The closeness of the matter is indicated by the current 3–2 vote within the county board to effectuate the con-

solidation plan. It has already been the subject of one suit in the state courts appealed to the State Supreme Court. Boatright v. Brown, member of Carroll County Board of Education, et al, 222 Ga. 497, 150 S.E.2d 680 (1966). (No. 4511, Carroll Superior Court). It is presently the subject of another pending state suit (No. 4842, Carroll Superior Court). Between the two state suits, all constitutional issues raised here are before the state courts. Notwithstanding these proceedings and the applicability of the federal constitution to the state tribunals, the plaintiffs have started anew in the United States District Court on the same grounds. This is in accordance with the current vogue of "forum shopping" occasioned by an expanding federal jurisdiction. Such practice in other areas has been recently criticized in view of the right of ultimate review of a federal question by appeal to the Supreme Court from a final state decision. See City of Greenwood v. Peacock, 384 U.S. 808 at 834, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

In order to involve federal jurisdiction, it is necessary to allege a federal constitutional question. In this posture, the present suit seeks to have declared invalid a provision of the Georgia Constitution (Article VIII, Section 5, Par. 1, Code Section 2–6801) and a general statute of the state (Code Section 32–954), dealing with the selection and powers of a local school board. Each of these provisions is said to offend the equal protection and due process clauses of the United States Constitution.

As undisputed background adduced at the hearing, the administration of public education in Carroll County is divided into two systems, the county system, present in all of Georgia's 159 counties, and the Carrollton system, a so-called independent system, of which there are some 36 remaining in Georgia. This dual system arose because certain municipalities in Georgia had strong local

---

1. Each of said defendants filed special motions to dismiss. Their presence in the suit would be necessary if plaintiffs prevail and, for that reason, ruling was reserved at the trial pending consideration of the merits.

systems which antedated the state system. They were incorporated into the state system, but allowed to maintain certain autonomy. Generally, their boundaries coincide with the municipal limits and local financial support is obtained through the levy of a municipal property tax. Historically, they are being phased out and combined with the regular county systems and their subsequent creation was prohibited by the State Constitution of 1945.[2]

In Carroll County and the other counties where the dual system exists, the county district embraces all territory outside the municipal independent system. Local financial support is obtained through levy of a school tax on property within its boundaries. With certain minor exceptions, occasioned by changes in city-limits, prior bond issues, and the like, no tax for support of the county system is levied on property within the independent district, and vice-versa. However, citizens of both districts pay taxes to the state, which furnishes the primary support to all systems, varying from 60% to 95% under a complicated state formula not at issue here. The Carroll County Board receives 87% of its operating revenues from the state.

The administration of county systems is vested in the County Board of Education by the state constitution.[3] The chief executive officer is the County School Superintendent.[4] In the absence of special legislation or general constitutional provisions with local effect, the superintendent is elected,[5] and the members of the Board are chosen by the county Grand Jury.[6] Selection by the Grand Jury is the traditional manner of obtaining School Board members.[7] Rejection of the system in favor of popular election was considered, but Grand Jury selection was retained in the Constitution of 1945, ratified by the people.[8]

(1) The present constitutional provision provides:

"2-6801. Paragraph I. *Establishment and maintenance; board of education; election, term, etc.*—Authority is granted to counties to establish and maintain public schools within their limits. Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall be confined to the control and management of a County Board of Education. The Grand Jury of each county shall select from the citizens of their respective counties five freeholders, who shall constitute the County Board of Education. Said members shall be elected for the term of five years * * *. The members of the County Board of Education of such county shall be selected from that portion of the county not embraced within the territory of an independent school district."

By general statute, the qualifications have been further particularized.

"The grand jury in selecting the members of the county board of education shall not select one of their own number then in session, nor shall they select any two of those selected from the same militia district or locality, nor shall they select any person who resides within the limits of a local school system operated independent of the county board of education, but shall

---

2. Article VIII, Section 7, par. 1—Code § 2-7001.

3. Article VIII, Section 5, par. 1—Code 2-6801. See also Georgia Code Section 32-1101.

4. Article VIII, Section 6, par. 1—Code 2-6901.

5. See Code Section 32-1002.

6. The Carroll County School District itself went on a popular election basis for its Board members in 1952 and returned to the Grand Jury selection in 1958 by referendum of the people.

7. The county Grand Jury is also the vehicle in Georgia for election of certain Justices of the Peace in the militia districts, nomination of voting registrars, appointment of members of Boards of Health, Welfare, etc.

8. 2 Records of Constitutional Commission 1943–4, pp. 71–75.

apportion members of the board as far as practicable over the county; they shall elect men of good moral character, who shall have at least a fair knowledge of the elementary branches of an English education and be favorable to the common school system. Whenever a member of the board of education moves his residence into a militia district where another member of the board resides, or into a district or municipality that has an independent local school system, the member changing his residence shall immediately cease to be on the board and the vacancy shall be filled as required by law. Notwithstanding the foregoing provisions to the contrary, a county may provide by local law that two or more members of the board of education may be selected from the same militia district." Georgia Code 32–903.

As can be seen, the law prohibits the selection of a resident of a local independent district on the County Board. On the other hand, such residents can and do serve as members of the county Grand Jury and, as such, participate in the choice of members of the County School Board. Such is the case in Carroll County and on this factual basis the Grand Jury selection is attacked as unconstitutional by the petitioners here.

(2) Once in office, the County Board has broad powers in the administration of its schools, subject to state and federal requirements. Vast population shifts, improved transportation, economy in operation, and the proved high-quality of larger schools has necessitated the rearrangement and consolidation of individual schools within each county.

Such changes have caused conflict and disagreement in many communities and the problem presented here exists, to a greater or less degree, in practically every Georgia county. In connection with such matters, the legislature has vested broad discretion in the County Boards, subject only to an appeal to the State Board.[9] By express statute, it is declared:

"The board of education of any county or independent school system is hereby authorized and empowered, if, in their opinion, the welfare of the schools of the county or independent school system and the best interests of the pupils require, to reorganize the pupils require, to reorganize the schools within their jurisdiction and to determine and fix the number of grades to be taught at each school in their respective systems." Georgia Code Section 32–954.[10]

Plaintiffs contend that such provision is unconstitutional in that it makes no provision for notice or hearing to the residents involved.

In their answer and motion to dismiss, the Carroll County Board and Superintendent assert that such provisions are not unconstitutional, that a hearing was held, though not required (Defenses No. 1, 2, 3, 4); that the claims are res judicata because of the state proceedings (Defense No. 5); that plaintiffs have not exhausted their administrative remedies by appeal to the state board (Defense No. 6); and that the court should stay this action on account of the pending state cases (Defense No. 7).

There is considerable merit to some of the special defenses.[11] Further, there

9. Code Section 32–414.

10. Although not specifically attacked here, Code Section 32–915 further provides: "The board of education of any county shall have the right, if, in their opinion, the welfare of the schools of the county and the best interests of the pupils require, to consolidate two or more schools into one school, to be located by said board at a place convenient to the pupils attending the same, the school-house to be located as near the center of the district or districts as practicable." See also: Bramlett v. Callaway, 192 Ga. 8, 14 S.E.2d 454 (1941); Fordham v. Harrell, 197 Ga. 135, 28 S.E.2d 463 (1943); Burton v. Kearse, 204 Ga. 765, 51 S.E.2d 796 (1949).

11. For example, no appeal was taken to the State Board as provided by Code 32–414 and, on accepted constitutional grounds, the Georgia courts have con-

is great temptation to rely on the doctrine of abstention, at least until the state courts can conclude the pending litigation, to avoid decision where the case may be disposed of on state law as in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or to avoid needless conflict with the administration by the state of its own affairs as in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L. Ed. 1424 (1943).

However, in order to preclude any misconception on the part of disgruntled school patrons in the remaining 195 school districts of the state as to the legal situation in connection with school consolidation and reorganization questions, we prefer to go to the heart of the matter on the two provisions attacked.

■ (1) The Constitutional provisions providing for Grand Jury selection presents no insurmountable federal difficulty. The power to select school board members resides in the state and the people within the state. School boards are political subdivisions of the state. By adoption of the Constitution of 1945, the people have decided that the members of the respective county school boards are to be chosen by the members of the grand jury, composed of "the most experienced, intelligent, and upright persons," in each county.[12] There is no federal requirement intended to compel a state to elect any of its officers or agents through popular vote of the people. Fortson v. Morris, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966). So long as the method is chosen by the people, and the method does not constitute an unreasonable delegation of power, it is sufficient. It is judicially recognized that the selection of hundreds of board members and agents, vitally concerned with the day-to-day operation of state governments, is delegated to special groups or even individuals who do not represent the people concerned on a prorata basis. To require otherwise would subject the people to endless elections at every level. In general, the choice of means of such selection is left to the people either directly or through its legislature. See 67 C.J.S. Officers § 27 ff; 20 C.J.S. Counties § 75ff. Here, the members of the grand jury from the independent school district have considerable direct financial interest through the payment of state taxes for support of all schools. Moreover, through their dual city-county citizenship, they are vitally concerned with the proper functioning of a county school system for the educational, economic, political, and moral betterment of the entire community. Thus, there is no hesitancy in concluding that the Grand Jury is an appropriate vehicle for the selection of County Board members, even where there is an independent school district, and no federal right exists to invoke the "voting case" requirements so as to nullify the

sistently ruled that such step was a prerequisite to the intervention of equity. Bedingfield v. Parkerson, 212 Ga. 654(4), 94 S.E.2d 714 (1956); Carter v. Board of Ed. of Richmond County, 221 Ga. 775, 777, 147 S.E.2d 315 (1966); Boatright v. Brown, 222 Ga. 497, 150 S.E.2d 680 (1966).

Further, there is no dispute that the consolidation resolution was first adopted by the County Board on January 4, 1966, that a large well-attended emotional hearing was held on January 29, 1966, following which the resolution was readopted on February 1, 1966. Later, apparently to satisfy the State School Building Authority, a further resolution designating signatories on behalf of the Board, was adopted on September 17, 1966. These proceedings leave considerable basis to conclude on factual grounds that there was ample notice and opportunity to be heard afforded all residents of Carroll County. Also, a hearing could be obtained under the appellate procedures to the State Board.

There is no question that the "class" represented here is the same "class" as that involved in the state cases, though the listed plaintiffs vary slightly. As such, the doctrine of res judicata could apply to the present complaint, though we make no finding in connection with this special defense either.

12. See Code Section 59–201.

selection of the present board in Carroll County.[13]

(2) The thrust of plaintiff's complaint against Code Section 32–954 is based on a claimed property right of school patrons in the location and maintenance of the particular schools involved. Thus the petition alleges that the refusal of the defendants to grant "a hearing before said Board of Education on the action of the named defendants in adopting a reorganization resolution—without notice or opportunity for a hearing in violation of the Fourteenth Amendment to the United States Constitution and the Fifth Amendment to the United States Constitution—deprives the petitioners of their *property* right to have their children attend Mt. Zion and Temple High Schools and Roopville and Whitesburg Elementary Schools." (Par. 2). In essence, then, the plaintiffs contend that they have a property right in maintaining such schools in a status quo, which cannot be taken away without due process, including notice and hearing. This is not a claim that no school at all is provided, or that a particular group is being discriminated against by reason of race, or that public funds are being improperly expended, but simply an insistence that a property right exists in the maintenance of a certain school in a certain location.

■■ We perceive no such property right. While the Fourteenth Amendment prevents State interference with vested property rights save by due process of law and "property is more than the mere thing which a person owns", it is clear that such property rights are personal and not public. City of Birmingham v. Monk, 185 F.2d 859 (5th Cir. 1950),

cert. den. 341 U.S. 940, 71 S.Ct. 1001, 95 L.Ed. 1367. See also Missouri ex rel. Gaines v. Canada, 305 U.S. 337 at 351, 59 S.Ct. 232, 83 L.Ed. 208 (1938); Sweatt v. Painter, 339 U.S. 629 at 635, 70 S.Ct. 848, 94 L.Ed. 1114 (1950). The location of public schools is a matter in which no citizen has a personal right anymore than he would in the location of a highway, a hospital, a park, or other public facility. Thus in a bridge location dispute, the court stated that residents "can be said to be legally in no different position from an owner of property on a public highway that is bypassed by a new or modern re-route. The lack of redress for such loss is a calculated risk that goes with membership in a society wherein the greatest good for the greatest number is the objective" and no vested property right under the constitution was present. Bartron v. Delaware River Joint Toll Bridge Com'n, 120 F.Supp. 337 (D.N.J.1954), aff'd 216 F.2d 717, cert. den. 348 U.S. 943, 75 S.Ct. 364, 99 L.Ed. 738.

■■ The composition of school districts, the location, size, curriculum, and management of public schools are legislative matters and no property right exists therein.[14] This is true even though school tax money is involved. Therefore, the complaint of plaintiffs here is not justiciable under the due process or the equal protection clauses of the federal constitution. See Atty.-Gen. of State of Michigan ex rel. Kies v. Lowrey et al., 199 U.S. 233(4), 26 S.Ct. 27, 50 L.Ed. 167 (1905); Hodges v. Snyder, 261 U.S. 600(2), 43 S.Ct. 435, 67 L.Ed. 819 (1922); Detroit Edison Co. v. East China Township School District No. 3, 247 F.Supp. 296(4) (E.D. Mich.1965).[15]

13. Compare Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

14. Employment rights are personal and involve due process as was the case of the discharged school superintendent in Guy v. Nelson, 202 Ga. 728, 44 S.E.2d 775 (1947), and certain business rights are personal and constitutionally protected as

in Hornsby v. Allen, 330 F.2d 55 (5th Cir. 1964).

15. State courts have reached the same conclusion when the statute granting the school board power in such matters contains no jurisdictional requirement of notice. Typical is Town of Adams v. Callahan (1941), 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1080. See also annotations at U.S.C.A. Amend. 14 § 1, notes 3818 ff.

Discretion must be exercised at some level to permit orderly government without the delays and harassment of public hearings on each and every decision. On these matters, such discretion has been entrusted in Georgia to the local school boards. The decisions of local boards of education ought not to be interfered with by courts of equity unless they amount to a violation of law or damage some transcending personal right in a gross abuse of discretion. Such is not the case here.

Accordingly, the motion to dismiss as to the Carroll county defendants is granted. Likewise, the special motions to dismiss on behalf of defendants Sims and Fortson, are granted.

It is so ordered.