# Commonwealth, Appellant, *v.* Wise.

*Constitutional law—Construction—Conflicting provisions—Sections 1, 2, 7 of article XIV of the constitution—Public officers—County commissioners— Vacancy in office.*

In construing a constitution, the object is to give effect to the intent of the people adopting it. This is to be ascertained from the instrument itself, and by giving to its words and terms their ordinary and usual signification, unless it appears from the context, or entire instrument, that another meaning was intended. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory.

As there is no constitutional or statutory provision for determining which of the three predecessors in the office of county commissioner is the predecessor of a commissioner elect who refuses to qualify, the provision in section 2 of article XIV of the constitution, that a county officer shall continue in office until his successor shall be qualified, cannot apply where one of the county commissioners elected under section 7 of article XIV declines to qualify and accept the office. That provision was manifestly intended to apply to cases where a single individual filled a county office, and where, therefore, it is enforceable and gives an opportunity to continue in office an elective, instead of an appointive official. Where a commissioner elect refuses to qualify a "casual vacancy" occurs which may be filled in the manner provided by section 7 of Article XIV. The Act of April 15, 1834, sec. 16, P. L. 537, has no application to such a situation.

Argued May 15, 1906. Appeal, No. 162, Jan. T., 1906, by plaintiff, from judgment of C. P. Lancaster Co., Trust Book No. 20, page 43, overruling demurrer in case of Commonwealth ex rel. William Brown, District Attorney of Lancaster County, v. J. Valentine Wise. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Quo warranto to determine title to office of county commissioner.    Before LANDIS, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in overruling demurrer.

*W. U. Hensel,* for appellant, cited as to what constitutes a vacancy:  Com. v. Troxel, 20 W. N. C. 549;  Walsh v. Com., 89 Pa. 419.

*John E. Malone,* for appellee, cited as to the right of the defendant to hold over:  Com. v. Hanley, 9 Pa. 513;  McKinley's Case, 28 Pa. C. C. Rep. 90;  York County v. Small, 1 W. & S. 315;  Com. v. Gaige, 94 Pa. 193;  Com. v. King, 85 Pa. 103;  Miller v. Sacramento County, 25 Cal. 93;  People ex rel. Melony v. Whitman, 10 Cal. 38;  Elam v. State, 75 Ind. 518;  State v. Harrison, 113 Ind. 434 (16 N. E. Repr. 384);  State v. Lusk, 18 Mo. 333;  Sappington v. Scott, 14 Md. 40;  Smoot v. Somerville, 59 Md. 84;  Johnson v. Mann et al., 77 V. 265;  State v. Hadley, 64 N. H. 473 (13 Atl. Repr. 643).

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1907:

At the general election held in November, 1902, M. L. Greider and Lewis J. Kirk, the nominees of the republican or majority party, and J. Valentine Wise, the nominee of the democratic or minority party, were elected county commissioners of Lancaster county and having been duly qualified, they entered upon the performance of their duties on the first Monday of January, 1903.    At the election held in November, 1905, S. Millo Herr and L. R. Reist, the nominees of the republican or majority party, and Edward D. Reilly, the nominee of the democratic or minority party, were elected commissioners of the county.    Herr and Reist were duly qualified and entered upon the discharge of their duties on the first Monday of January, 1906.    Reilly refused to take the oath of office, and on January 1, 1906, filed in the court of common pleas of Lancaster county a paper in which he states that "I hereby resign and decline the office of county commissioner of Lancaster county to which I have been elected, and I hereby respectfully request you to fill the vacancy as provided by law."

Reilly having declined to accept the office, J. Valentine Wise has, by virtue of his prior election and qualification as county commissioner, continued to act as one of the commissioners since the first Monday of January, 1906. At the suggestion of the district attorney, the court of common pleas of Lancaster county issued a quo warranto against Wise commanding him to show by what warrant he claims to hold the office. He appeared and filed an answer in which he averred that in November, 1902, he was elected a commissioner of Lancaster county as a representative of the minority party and entered upon the performance of his duties on the first Monday of January, 1903; that on the first day of January, 1906, he, Herr and Reist, the two majority candidates elect, met as the board of county commissioners and he claimed to be entitled to hold the office until Reilly qualified as a commissioner; that he then presented to the board of commissioners a paper, signed by Greider and Kirk, the retiring county commissioners, in which they disclaimed any right to continue as county commissioners by reason of one of the county commissioners elect having failed to qualify; and that being a county officer, he has a right to continue the performance of the duties of a county commissioner under section 2 of article XIV of the constitution which provides that county officers shall hold their offices for the term of three years, " and until their successors shall be duly qualified." The commonwealth demurred to the answer, and the case was heard by the court below on the suggestion, answer and demurrer. The learned judge, in an elaborate opinion, held that Reilly's act in declining the office of county commissioner to which he had been elected did not create a vacancy in that office, and that Reilly was the successor of Wise, and, therefore, the latter had the right to hold over until his successor was elected and qualified. He therefore declined to enter judgment of ouster against the defendant.

Article XIV of the constitution of 1874 is devoted exclusively to county officers, and is the only part of the instrument which makes provision for their election and the filling of vacancies in county offices. Section 1 of the article declares that " County officers shall consist of . . . . commissioners, . . . . auditors or controllers, . . . . and such others as may from time to time be established by law." Section 2 of the

article provides that " County officers shall be elected at the general elections and hold their offices for the term of three years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; all vacancies not otherwise provided for shall be filled in such manner as may be provided by law." Section 7 of the article provides that " Three county commissioners and three county auditors shall be elected in each county where such officers are chosen, in the year 1875, and every third year thereafter; . . . . any casual vacancy in the office of county commissioner or county auditor shall be filled by the court of common pleas of the county in which such vacancy shall occur, by the appointment of an elector of the proper county, who shall have voted for the commissioner or auditor whose place is to be filled."

There are certain questions arising out of the interpretation of the provisions of the constitution of 1874 relative to county officers which are so well settled by the plain language of the instrument itself or by the adjudications of this court that they are no longer open to discussion. County officers in the several counties of the commonwealth must be elected at the general election, and by section 2 of article XIV of the constitution they shall hold their offices for three years from the first Monday of January following their election " and until their successors shall be duly qualified." A vacancy in a county office not otherwise provided for, is to be filled, under this section of the article, in such manner as may be provided by law. County commissioners are county officers, and by section 7 of the article three persons are to be chosen commissioners under a system of minority representation, and any casual vacancy which may occur must be filled by the court of common pleas by the appointment of an elector who voted for the commissioner whose place is to be filled. If a vacancy occur in the office of county commissioner and it is filled, the occupant thus installed will perform the duties of the office for the residue of the triennial term. The death of a person elected to fill the office of clerk of the orphans' court before he was qualified did not, under the constitutional amendment of 1838, create a vacancy, but the incumbent then in office held over until his successor was qualified. The same construction was given section 2 of article XIV of the present constitution where two candi-

dates for prothonotary had the same vote and, hence, there had been a failure to elect.

Conceding the above propositions to be settled law in this state, we now come to the consideration of the question involved in this case, to wit: whether J. Valentine Wise elected as the democratic or minority county commissioner at the general election in November, 1902, and whose term would otherwise have expired January 1, 1906, is entitled to hold over and continue in office for another term of three years because Edward D. Reilly, elected in 1905 as the democratic or minority commissioner, declined to accept the office and qualify.

In construing a constitution, the object is to give effect to the intent of the people in adopting it. Cooley's Const. Lim., 7th ed., 89. This is to be ascertained from the instrument itself, and by giving to its words and terms their ordinary and usual signification, unless it appears from the context or entire instrument that another meaning was intended. Judge Cooley in discussing the rule that the whole instrument is to be considered in ascertaining the intention of each part says (Const. Lim. 91): "The rule applicable here is, that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory. . . . It is scarcely conceivable that a case can arise where a court would be justifiable in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together."

The defendant contends that the refusal of Reilly to qualify and assume the duties of the office of county commissioner did not create a vacancy in the office, and that Reilly, being the minority commissioner, is the successor of the defendant in the office, and that therefore the latter is entitled to continue to act as commissioner until the first Monday of January, 1909. Prior to the adoption of the present constitution, the office of county commissioner was a statutory and not a constitutional of-

fice, and the position of the defendant would be correct if, as under the prior legislation of the state, there had been but a single commissioner to elect at the annual general election. The refusal to qualify and accept an office does not, in such cases, create a vacancy, and the person elected at the preceding election holds over until his successor qualifies and takes the office. But can that rule be invoked under the present constitution where one county commissioner or one county auditor refuses to qualify and enter upon the discharge of the duties of his office? If such action on the part of a commissioner or auditor elect does not create a vacancy, is there any method or way provided in the constitution or the laws of the commonwealth for determining who is the immediate predecessor to the defaulting candidate elect and who shall hold over as his successor? If no such provision has been made and it cannot be ascertained in such case which of the three incumbents of the office the candidate elect succeeds, it is apparent that the provision of section 2 of article XIV, that county officers shall continue in office until their successors are duly qualified, cannot apply in case of the failure of a county commissioner or county auditor elect to qualify, and that such conduct on the part of the candidate elect does create a vacancy in the office under that section.

It will be observed that there is no county office except that of commissioner and auditor which requires more than one person to be elected at the same election to fill it, and to which the principle of minority representation is or can be applied by the constitution. While section 2 of article XIV provides that county officers shall hold their offices for three years " and until their successors shall be elected," the subsequent section, 7, of the same article is devoted exclusively to provisions for the election and appointment of commissioners and auditors and provides that three commissioners and three auditors shall be elected triennially with minority representation, but contains no provision that they shall continue in office until their successors are elected. Provision is made, however, in both sections for the filling of vacancies. The second section provides that " all vacancies not otherwise provided for, shall be filled in such manner as may be provided by law," and section 7 declares that " any casual vacancy in the office of county commissioner or county

auditor shall be filled by the court of common pleas . . . . by the appointment of an elector . . . . who shall have voted for the commissioner or auditor whose place is to be filled." The defendant contends that section 2 of the article must be read in connection with section 1, and as the latter declares that a county commissioner and county auditor are county officers, it follows that they are within the provision of the former section and are entitled to hold their offices " until their successors shall be duly qualified," and that in cases like the one at bar no casual vacancy occurs and the incumbent is entitled to hold over. This contention should be sustained if it will harmonize the three sections of article XIV of the constitution under consideration here. The three sections, as well as every other part of the instrument bearing on the subject, must be considered and read together in ascertaining what any part or all of it means. But will the construction contended for by defendant give effect to section 7 of the article, or result in manifest absurdity and prevent its provisions being carried out? If the latter result follows the defendant's contention, it cannot prevail because, as we have seen, it would be in direct conflict with the well-established rules of constitutional interpretation.

Reilly's failure to qualify left one officer short of the three which the constitution requires to form a board of county commissioners. Was he the successor of Greider, Kirk or Wise, the three commissioners who were elected in 1902, and whose respective terms of office would otherwise expire on January 1, 1906? There is no way known to the constitution or the laws of the commonwealth by which that question can be determined in any case when a commissioner or auditor refuses to qualify and enter upon the discharge of his duties.

While the constitution recognizes and enforces minority representation in the election and appointment of county commissioners and county auditors, yet after they assume the duties of their offices no such distinction is or can be recognized or permitted. Each officer, while he may or may not continue his past party affiliations, is a commissioner or an auditor of the county with the same rights, powers and duties as either of his two colleagues. The fact that he is elected as the minority representative of the board invests him with no greater

or lesser authority in the transaction of the business of the office than either of the other two members of the board elected by the majority party.   In the discharge of their official duties, the three commissioners or auditors do not act as the representatives of the majority or minority party, but as officials in conformity with their duties prescribed by the laws of the commonwealth, uncontrolled and uninfluenced by any party affiliations or obligations.   In this country, this is the theory upon which all officials, municipal, state and federal, are expected to act, and upon which they must act if our system of government is to be preserved.

Entertaining these views of the duties and obligations of a county commissioner or county auditor after he assumes the office, we cannot assent to the proposition, so earnestly urged by the learned counsel of the defendant, that as Reilly was elected in 1905 as the representative of the democratic or minority party he is the successor of Wise who was elected as the representative of the democratic or minority party in 1902, so as to entitle the latter to continue in office under the provisions of section 2 of article XIV of the constitution.   Aside from the contention being contrary and repugnant to the principles upon which officials hold their offices and discharge their official functions, there are other reasons why it cannot be sustained. Assume that the prohibition and not the democratic party had elected the minority commissioner in Lancaster county in 1905, it manifestly would be contrary to the spirit of the constitution to continue Wise in office who, presuming he had continued his party fealty, was a democrat and not a member of the prohibition party which by the votes cast in 1905 would be the minority party at that time.   If, as suggested, a member of the prohibition party had been elected as the minority representative on the board of county commissioners in 1905 and had died while in the discharge of the duties of the office, it will be conceded that under section 7 of article XIV of the constitution the court would be compelled to fill the vacancy by appointing an elector who had voted for the prohibition candidate and not an elector who had voted for the democratic candidate.   In that event, it is apparent that Wise or no other democrat who had voted for the democratic candidate would be eligible for the appointment to fill the vacancy.   This provision of the con-

stitution recognizes what in practice is a fact, that the minority party at one election is frequently not the minority party at the subsequent election, and ordains that the minority representative on the board of county commissioners and county auditors shall be an elector who voted for the successful minority candidate at the last election at which commissioners and auditors are elected.

Judge Cooley, in speaking of uniformity of construction, says (Cooley on Const. Lim. 88) : " A cardinal rule in dealing with written instruments is that they shall receive an unvarying interpretation, and that their practical construction is to be uniform. A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable." Let us see what would be the interpretation of section 7 of article XIV if Herr or Reist, the republican or majority representatives on the board of commissioners elected in 1905, had declined to accept the office. The rule of construction which we must apply in interpreting the constitution on the refusal of Reilly to accept the office must be the same in case either of the majority candidates for the position had failed to qualify. If Herr or Reist, elected on the majority ticket in 1905 had declined the office, which of the two majority members of the former board would have held over as his successor? The constitution affords no answer to the question and there is no statutory provision which solves it. Neither will it do to say that it is subject to an amicable arrangement between the interested parties. They can only proceed according to constitutional or statutory authority, and in the absence of such authority their act would be ultra vires and void, and would not sustain any claimant in his right to the office.

Let us, for a moment, look at other conditions which have existed and which under our elective system will doubtless exist again in some of the counties of this state in the election of county commissioners and county auditors. Assume the political situation in Lancaster county to have changed in the last three years, and that two democrats and one republican had been elected commissioners in 1905 and the republican elect had declined the office, which of the two of the majority

members of the old board would have held over as his predecessor? Assume again that the two democratic members elect had declined to serve, which of the two members of the old board would have succeeded them? Would it have been one democrat and one republican or both of the republican members of the old board? Assume, as has occurred in some of the counties of the state, that in violation of the spirit of the constitution the majority party should elect a board of all three county commissioners which was succeeded by a board elect with a minority representative on it and the latter had declined the office, which one of the three members of the old board would succeed him?

As there is no constitutional or statutory provision for determining which of the three predecessors in the office of county commissioner or county auditor is the predecessor of a commissioner or auditor elect who refuses to qualify, it is apparent, we think, that the provision in section 2 of article XIV, that a county officer shall continue in office until his successor shall be qualified, cannot apply where one of the county commissioners or county auditors elected under section 7 of article XIV declines to qualify and accept the office. That provision was manifestly intended to apply to cases where a single individual fills a county office and where therefore it is enforceable and gives an opportunity to continue in office an elective instead of an appointive official.

It is suggested in the brief of the learned counsel of the appellant, that the Act of April 15, 1834, P. L. 537, makes provision for filling any vacancy which may occur in the office of county commissioner. That act would have met the case of any vacancy whatever in the office of county commissioner arising under the prior constitution. But the difficulty, and we think it insuperable, in applying it to the case in hand, is that the provision for appointing is not adequate to carry out the purpose of section 7 of article XIV of the present constitution. That section, as will be observed, provides for the election of a minority representative in the boards of county commissioners and county auditors, and directs that in case of a casual vacancy in either office, the same principle shall be recognized in filling it. The spirit of the constitution as well as the expressed intention of its framers and the people who

ratified it are that the minority party, shown to be such at the last election at which commissioners and auditors are elected, shall, during the whole of the succeeding term, have a representative in those offices. Judicial interpretation should carry out this intention if a reasonable and natural construction will permit.

Turning to the act of 1834 we see that section 16 provides that if, for the reasons therein stated, there is a vacancy in the office of county commissioner, " the remaining commissioner or commissioners, together with the court of quarter sessions of the county, shall appoint a suitable citizen to fill the vacancy until the next general election, when a commissioner shall be elected for the unexpired term." It is obvious, we think, that the act does not make sufficient provision for filling vacancies in the office of county commissioner like the one in the case at bar so as to carry out the principle of minority representation, as clearly contemplated shall be done by section 7 of article XIV of the constitution. Admittedly, the vacancy must be filled for the residue of the three year term, and not until the next general election as the act of assembly provides. The act does not provide that in filling the vacancy, the appointing power shall recognize and enforce majority and minority representation as contemplated by the constitution. This was not required under the constitution in force in 1834, and hence it was not necessary that the act of assembly, passed in that year to fill vacancies in the office, should make provision for it. Under this act the single qualification required of the appointee is that he shall be " a suitable citizen," and the appointing power can fill a minority vacancy by an elector who had voted for the majority candidate, or could fill a majority vacancy or vacancies by an elector or electors who had voted for the minority candidate and thus make the board of commissioners to be composed entirely of electors who had voted for the majority candidates or for the minority candidates. Such action would be an infringement of the constitutional provision providing for minority representation, but it would not be a violation of any provision of the act of 1834.

It may be argued, however, that if the act of 1834 does not authorize the filling of vacancies in the office of county commissioner under the present constitution that the legislature

has the power to make the necessary provision for filling vacancies in the office by virtue of section 2 of article XIV which provides that "all vacancies (in county offices) not otherwise provided for, shall be filled in such manner as shall be provided by law." But we cannot assent to the correctness of this proposition. By section 7 of article XIV it was obviously intended to make full provision for the election of county commissioners as well as for filling any vacancies which might occur in the office. That is the only section which deals with the subject and it recognizes minority representation and provides for its enforcement in the election and appointment of county commissioners. It does not authorize the legislature to provide for the filling of a vacancy in any contingency. Nor does section 2 of the article, as above suggested, provide for the filling of a vacancy in such manner that minority representation shall at all times be preserved. It therefore necessarily follows that unless section 7 of the article makes provision, not only for the election of county commissioners but for the filling of any vacancy which may occur in the office, there is no constitutional provision which does make provision for filling the vacancy in such manner as to preserve minority representation in the board, as is manifestly intended by the section. It cannot be assumed that it was the intention of the framers of the constitution, that it should be discretionary with the legislature that the boards of county commissioners and county auditors should be constituted as provided in section 7 which ordains that minority representation shall be observed in their selection ; and unless that is conceded it is apparent that the legislature has no authority to provide for the filling of such vacancy under section 2 of the article which does not require that body to observe any conditions or limitations in legislating on the subject of filling vacancies in county offices. Such construction of sections 2 and 7 of the constitution would result in delegating to the legislature in cases of vacancies in the boards of county commissioners and county auditors the authority to defeat and prevent the enforcement of the principle which the framers of that instrument and the voters who ratified it declared should be enforced in the selection of these officers.

We are therefore of opinion that there is no act of assembly which authorizes the filling of vacancies occurring in the boards

of county commissioners and county auditors, and that under the present constitution the legislature is not authorized to enact legislation to fill such vacancies.

Has the constitution made no provision for filling the place of a county commissioner or county auditor elect who declines to qualify, and is there a casus omissus in this respect in the constitution? The defendant contends that such action by an officer elect does not create a "casual vacancy" which, by the constitution, the court is authorized to fill. If this be true, then as suggested above, we know of no provision in the constitution or statutes of the state and have been referred to none, which makes provision for such a contingency, and hence the constitutional mandate that there shall be three county commissioners and three county auditors is incapable of being carried into execution. In view, however, of the settled rule of interpretation, we cannot accede to the construction of the words in question which will render the constitutional provision nugatory or incapable of being carried into effect. On the contrary, we think it was the intention of the framers of the constitution to provide in the instrument itself not only for the election of county commissioners and county auditors, but also for the appointment to fill all vacancies in those offices so as to preserve minority representation therein, and that, therefore, where there is a vacancy in the office by the candidate elect failing or refusing to qualify, or when he dies before entering upon the discharge of the duties of the office, it should be regarded as a "casual vacancy" within the intendment of section 7 of article XIV of the constitution, and be filled by appointment by the court as provided in that section. If it were determinable from the constitution or by any law which was or could be enacted in pursuance thereof which of the three incumbents of the office was the predecessor of the officer elect who refuses to qualify, there would be no difficulty in enforcing the provision of section 2 that he should continue to discharge the duties of the office, and under such circumstances, it might well be that a different interpretation would be given the words in question. In that case, the ordinary meaning of the words might control the meaning which a consideration of the whole instrument under the circumstances of this case requires to be adopted. While it is true that in construing a constitution the

ordinary and natural meaning must be given the words and terms used in it, yet when it is apparent from the context and the whole scope of the instrument, and especially when that meaning will render nugatory a part of the instrument, a broader meaning may be given such words and terms and one that will render all parts of the instrument effective and thus carry out the manifest intent of its framers.    Here the election of county commissioners and county auditors is provided for in a single section of the constitution with a provision for filling casual vacancies, but with no provision in the section for such officers continuing in office until their successors are qualified. Without any feasible or practical provision in any other part of the constitution for providing a successor where the candidate elect refuses to qualify, it is clearly within the proper rules of construction to hold that there is a "casual vacancy" in the office within the meaning of section 7, and that it should be filled in the manner therein provided.

For the reasons given, we must reverse the judgment of the court below and direct that defendant be ousted from the office.

The writer may be permitted to say that the recent assignment of the case is the cause for the delay in handing down the opinion.

The judgment is reversed and judgment is now entered here for the commonwealth upon the demurrer; and it is further ordered and adjudged by the court that the defendant, J. Valentine Wise, be and hereby is, ousted from the office of county commissioner of Lancaster county, and from the franchises, rights, privileges and emoluments thereof, and that he pay the costs of this proceeding.