Edward P. Zemprelli, State Senator, Petitioner *v.* Richard L. Thornburgh, Governor, Respondent.

Argued September 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge ROGERS did not participate.

*Michael T. McCarthy,* Chief Counsel to the Majority Caucus, with him *Ronald W. Andidora,* Assistant Counsel to the Majority Caucus, for petitioner.

*David H. Allshouse,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, Chief, Civil Litigation, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE CRAIG, December 16, 1980:

In our previous opinion in this case, *Zemprelli v. Thornburgh,* 47 Pa. Commonwealth Ct. 43, 407 A.2d 102 (1979) *(Zemprelli I)* we decided the preliminary objections which respondent, the Governor of the Commonwealth of Pennsylvania, had interposed against this action in which petitioner, as a member of the Senate of Pennsylvania, seeks enforcement of Section 8(b) of Article IV of the Pennsylvania Constitution, providing in part that:

(b) The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy and not thereafter.

In *Zemprelli I,* we overruled the preliminary objections, holding that petitioner has standing to bring the action, that the question is a justiciable one and that the 90-day provision of the constitution is mandatory as to the timeliness of nominations and not merely directory.

In examining the feasibility and appropriateness of a judicial remedy, as one of the criteria of justiciability prescribed by *Baker v. Carr,* 369 U.S. 186 (1962) and *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977), we gave serious consideration to problems of application which could arise and concluded (1) that, with respect to each successive governor, the 90-day period, as to any given vacancy, commences not earlier than the first day of such vacancy within each governor's term, and (2) that, as to the present Governor, we should initially apply the mandatory time limit only prospectively, by holding that no 90-day period shall start earlier than the effective date of the final judicial order in this case.

After our decision in *Zemprelli I,* respondent filed an answer and new matter, and petitioner filed a reply to the new matter. Each party has now filed a motion for summary judgment, with supporting affidavits. Both motions agree that there are no material facts now in dispute.

Petitioner does not question our previously-expressed view that each governor should have the benefit of the running of the entire 90 days within his respective term, but he (a) argues that a governor should be required to fill every vacancy within 90 days, without an option of inaction, and (b) asks that we

reconsider the approach of giving only prospective effect to our order in this case.

Our initial concern, however, must be with the questions raised by respondent, which, in view of our basic substantive conclusion in *Zemprelli I,* holding the 90-day time limit to be mandatory, are primarily in the nature of affirmative defenses, as follows:

1. Is petitioner barred from obtaining relief by the doctrine of judicial estoppel?

2. Is petitioner's cause barred by laches?

3. Under Pa. Const. art. IV, §8(b), does a vacancy exist when the previous incumbent holds over after the end of a term of office?

4. If vacancies do not exist in the holdover situations, since the few remaining vacancies (among the offices named in this action) had not been in existence for as long as 90 days when this suit was commenced, is this proceeding moot—or, perhaps more properly, is it premature?

We will initially consider the respondent's four questions and then, as the fifth and sixth questions respectively, the petitioner's issues concerning executive inaction and prospective application.

### 1. Judicial Estoppel

Is petitioner barred from relief here because petitioner, in his capacity as a Senator of the Commonwealth of Pennsylvania, has, by actions and statements at various times, taken positions inconsistent with the legal conclusion espoused by petitioner here?

Respondent's pleadings and affidavits as to the facts on this point can be summarized in substantially the words used in respondent's brief, which state that, at various times, petitioner has voted to confirm post-90-day nominations (during the term of the previous

Governor), argued on the Senate floor that the 90-day provision was directory only (also during the previous gubernatorial term), then sponsored a resolution stating that Senate action on nominations made after 90 days would be unconstitutional, argued that the Senate could waive the 90-day limitation if it so desired, and now claims herein that the 90-day provision is mandatory and that gubernatorial failure to submit nominations within 90 days is a nullification of senatorial authority.

As legal authority, respondent quotes *Wade v. Woodings-Verona Tool Works, Inc.*, 469 F. Supp. 465, 467 (W.D. Pa. 1979) to the effect that

> [*A*] *party may be precluded by a prior position taken in litigation from later adopting an inconsistent position in the course of a judicial proceeding.* Scarano v. Central R. Co. New Jersey, 203 F.2d 510, 513 (3d Cir. 1953). (Emphasis in original.)

The same quotation describes the doctrine as applicable whenever a litigant plays "fast and loose" with the courts.

The difficulty with respondent's contention is that none of petitioner's allegedly inconsistent actions and statements, which all were in the course of senatorial proceedings, constitute "a prior position taken in litigation"; therefore none of those actions or statements come within the concept described in the authority on which respondent primarily relies.

Neither respondent's research, nor ours, has uncovered any authority for the proposition that a lawmaker is barred from ultimately taking a position in litigation contrary to that which he has previously taken in the legislative halls.[1] No legally operative

---

[1] In *Buehler v. Philadelphia & Reading Rwy. Co.*, 280 Pa. 92, 124 A. 325 (1924), a railroad, having earlier pleaded involvement in interstate commerce in a state compensation case, was estopped

principle has yet countered the philosophical dictum by which Ralph Waldo Emerson has, over the years, comforted judges along with legislators and executives, stating that a "foolish consistency is the hobgoblin of little minds."[2]

Judicial estoppel is not effective as a defense in this case.

## 2. Laches

Does the doctrine of laches bar this action as to three of the offices named in the petition for review, which refers to a vacancy which occurred on the Pennsylvania Game Commission as early as January 18, 1977, on the Pennsylvania Turnpike Commission as early as June 4, 1977 and on the Pennsylvania Liquor Control Board as early as March 7, 1978—all substantially before respondent Governor took office on January 16, 1979 and before the petition for review was filed in May 1979?

As is well understood, laches is applicable as a bar when protracted delay extends beyond the point at which an adverse party, in reliance upon the lack of a demand, reasonably makes a change of position. *Leedom v. Thomas*, 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977), defines laches as a "defense [which] bars relief when 'the complaining party is guilty of want

---

from denying that involvement in a subsequent federally-based compensation case on the same claim. In *Selected Risks Insurance Co. v. Kobelinski*, 421 F. Supp. 431 (E.D. Pa. 1976), the Small Business Administration, having previously opposed federal court jurisdiction in federal court, was estopped from subsequently seeking removal of the same case from the state court on grounds of federal jurisdiction. In the *Scarano* case, *supra*, an earlier recovery on a disability claim precluded a later claim for wages, based upon ability to work during the same time period.

[2] R. W. Emerson, *Essays by Ralph Waldo Emerson, First and Second Series*, "Self Reliance", p. 32 (Thomas Y. Crowell & Co. 1883).

of due diligence in failing to institute his action to another's prejudice.' "

Here respondent points to no change of·position or prejudice to respondent induced by any delay of petitioner.

Thus the situation here is readily distinguishable from *Taggart v. Board of Directors of Canon-McMillan Joint School System,* 409 Pa. 33, 185 A.2d 332 (1962), where a school teacher's delay of five years in bringing a claim for extra compensation was a bar to recovery because school budgeting and financing processes would be prejudiced by such procrastination. Also quite different was the situation in *Frank v. Tucker,* 21 Pa. Commonwealth Ct. 383, 346 A.2d 848 (1975), *aff'd.* 464 Pa. 1, 345 A.2d 702 (1975) where, in the rapidly moving election process, delay in questioning lack of certification of a judicial vacancy was prejudicial to functioning of the nominating procedures.

We hold that laches is not effective as a defense here.

### 3. Holdover Incumbencies

Do "vacancies" exist, to make the 90-day time limit applicable, where incumbents continue to occupy offices after the end of stated terms, pursuant to valid provisions of law extending the term of each such incumbent "until his successor is appointed and qualified"?

Respondent urges a negative answer to this question, so that the 90-day time limit would be operative only where a position lacks an incumbent on any basis, as where the previous incumbent has resigned, died or been removed by law, or where the office is a newly-created one.[3]

---

[3] Respondent presses this point only to the effect that, where there is no vacancy, the 90-day time period in Pa. Const. art. IV,

We must agree with respondent that the basic rule established by the cases is that, at least as to elective offices, if a valid holdover clause is applicable and no successor qualifies as such after the end of a term of years, the term of an incumbent is extended and there is no vacancy for the Governor or other appointing authority to fill. *Commonwealth ex rel. v. Lomas,* 302 Pa. 97, 153 A. 124 (1930); *Commonwealth ex rel. v. Hanley,* 9 Pa. 513 (1849).[4]

Where no holdover provision has been enacted, as in the case of judicial office, a vacancy does exist, amenable to being filled by gubernatorial appointment. *Commonwealth ex rel. v. McAfee,* 232 Pa. 36, 81 A. 85 (1911). There is also a vacancy where a statutory holdover provision is invalid and therefore ineffective because it conflicts with a constitutional provision for a flat term of years. *Commonwealth ex rel. v. Sheatz,* 228 Pa. 301, 77 A. 547 (1910).

Under the pleadings and affidavits here, the present case specifically involves one position on the Pennsylvania Turnpike Commission, one position on

§8(b) does not run. Of course, the absence of a vacancy does not preclude appointment action by the governor; the governor's appointing power is left free to operate by the self-limiting terms of the standard holdover provision, which leaves the predecessor in office only "until his successor is *appointed* and qualified."

[4] One qualification is that the Pennsylvania Supreme Court has not applied the basic rule in a situation where successors have been elected for two or more positions on a multi-member board or commission and one of those successors fails to qualify; because it is there not possible to identify which of several predecessors was the predecessor of the one who did not qualify, there is a vacancy to be filled by appointment. That exception appeared in *Commonwealth v. Wise,* 216 Pa. 152, 65 A. 535 (1907) where one of three elected successors to a board of county commissioners died before qualifying, and the court held that one of the three former county commissioners could not hold over even though he, like the deceased commissioner-elect, was the minority commissioner and the two other predecessors had waived any claim.

the Pennsylvania Liquor Control Board, three positions on the Pennsylvania Securities Commission, three positions on the Pennsylvania Game Commission, thirty-nine positions on college boards and one hundred twenty-four positions on state hospital boards.

None of those positions are constitutional ones, all having been created by statute. The terms of most of the positions in this case have been legislated with a holdover provision appended to the term of office, reading, "and until his successor is apointed and qualified." Those provisions are found in the respective statutes establishing the various boards and commissions.[5]

Although the general rule, that occupancy of an office by an incumbent under a holdover provision obviates the existence of a vacancy, has emerged in cases involving elective office, the principle therein evident, that an office is not vacant when it is occupied, logically applies with equal force to appointive office occupied by an incumbent holding over.

In rebuttal, petitioner cites *Commonwealth ex rel. v. McAfee, supra,* for the proposition that the word "vacancy" has no "technical" meaning. *Commonwealth ex rel. v. McAfee, supra* at 47, 81 A. at 88. However, the actual sense of the passage is that the

---

[5] As to: the Pennsylvania Liquor Control Board, Section 201 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §2-201; the Pennsylvania Securities Commission, Section 601 of the Securities Act, Act of December 5, 1972, P.L. 1280, *as amended,* 70 P.S. §1-601; the Pennsylvania Game Commission, Section 208(c) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, §208(c), *as amended,* 71 P.S. §68(c), pertaining to independent and departmental administrative boards and commissions; state hospital boards, Section 401 of the Administrative Code of 1929, 71 P.S. §111; and state college boards, Section 2008.1 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* added by Section 9 of the Act of February 17, 1970, P.L. 24, *as amended,* 24 P.S. §20-2008.1.

word "vacancy" has no narrow technical meaning because it is to be understood in the ordinary sense, that "[a]n existing office without an incumbent is vacant"; the thrust of that decision was that an office is vacant when first created as well as when vacated by death or resignation.

Nor do we find any contrary indication in the report of the special committee which led to the constitutional provision in question. Even if that report, entitled "Senate Confirmation of the Governor's Appointments" had intended that "vacancy" means something other than absence of an incumbent, we are held to the proposition that constitutional language is to be interpreted in its ordinary and popular sense as the voters must have understood it when adopting it as fundamental law. *Commonwealth v. Harmon,* 469 Pa. 490, 494-95, 366 A.2d 895, 897 (1976); *Brereton Estate,* 355 Pa. 45, 54, 48 A.2d 868, 872 (1946). And plainly, an office is not vacant if it is occupied.

Petitioner's most specific rebuttal is Section 207.1 (e) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* added by Section 2 of the Act of November 8, 1976, P.L. 1109, 71 P.S. §67.1 (e) which reads:

> Notwithstanding the provisions of existing law providing for the extension of a term of office until a successor is appointed and qualified, for purposes of appointment under Article IV, Section 8 of the Pennsylvania Constitution, for those offices requiring Senate confirmation by this section a vacancy requiring appointment or reappointment by the Governor shall exist upon the expiration of the number of years or time period specified for said office.

Respondent counters that, if this Administrative Code section insists that the word "vacancy" in the constitution is to be read as applying to a situation where

the office is not vacant in fact or in law, but is occupied by an incumbent holding over, then it constitutes an invalid legislative attempt to rewrite the 1968 constitution in 1976, when that amendment was adopted.[6] We agree. *Commonwealth v. Sheatz, supra,* at 305, 77 A. at 549.

We recognize that our acceptance of respondent's view, that the 90-day time limit does not apply while an incumbent is holding over, requires that the first sentence of Section 8(b) of Article IV be understood as confined by its terms to the 90-day time limit for filling vacancies, while the remainder of subsection (b)[7]—dealing with the 25-day limit on the Senate and

[6] Added by Act of November 8, 1976, P.L. 1109, §2, *as amended.*

Moreover, Article VI, §1 of the Pennsylvania Constitution, providing that "all officers whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law," by authorizing statutory elaboration as to the election or appointment of officers, does not authorize statutory amendment of a provision in the constitution itself.

[7] The full text of subsection (b) of Section 8 of Article IV of the Pennsylvania Constitution follows:

(b) The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within ninety days of the first day of the vacancy and not thereafter. The Senate shall act on each executive nomination within twenty-five legislative days of its submission. If the Senate has not voted upon a nomination within fifteen legislative days following such submission, any five members of the Senate may, in writing, request the presiding officer of the Senate to place the nomination before the entire Senate body whereby the nomination must be voted upon prior to the expiration of five legislative days or twenty-five legislative days following submission by the Governor, whichever occurs first. If the nomination is made during a recess or after adjournment sine die, the Senate shall act upon it within twenty-five legislative days after its return or reconvening. If the Senate for any reason fails to act upon a nomination submitted to it within the required twenty-five legislative days, the nominee shall take office as if the appointment had been

other confirmation procedures—must be viewed as dealing with "each executive nomination", that is, *every* executive nomination, whether to fill a vacancy or to replace an incumbent holding over or otherwise. No violence is done to the subsection by so viewing it, although the point would be clearer had the first sentence been arranged within a separate subsection by itself.

The next-to-last sentence, providing that the governor "shall in a similar manner fill vacancies" in elective offices, offers no inconsistency because the governor's appointing power as to elective office operates only when a vacancy does exist, with no holding over. *Cf. Commonwealth v. Hanley, supra,* and *Commonwealth v. Lomas, supra.*

We must agree with counsel for respondent that there is nothing inherently unreasonable about the interpretation thus so literally derived. Although petitioner argues that the 90-day time limit was intended to apply in a holdover situation to insure prompt turnover after a term has expired, it is equally reasonable to read the constitution as intending only that the time limit be applied when an office is vacant to avoid a gap in the full manning of an agency.

Respondent's counsel also asserts that among the approximately 1700 positions under gubernatorial appointing power and subject to Senate confirmation, some 500 of them, according to the affidavit in the

consented to by the Senate. The Governor shall in a similar manner fill vacancies in the offices of Auditor General, State Treasurer, justice, judge, justice of the peace and in any other elective office he is authorized to fill. In the case of a vacancy in an elective office, a person shall be elected to the office on the next election day appropriate to the office unless the first day of the vacancy is within two calendar months immediately preceding the election day in which case the election shall be held on the second succeeding election day appropriate to the office.

record, simultaneously reach expiration of the stated term of years on the day that a new governor takes office. With the time limit not applied to holdover situations, each governor and the Senate are free from the untoward necessity of hurrying 500 appointments within the governor's first 90 to 115 days.

We also must agree with respondent that the applicability of a holdover provision to the statutory offices in this case remains within the hands of the General Assembly rather than the Governor. If the General Assembly chooses, holding over can be expressly forbidden by statute at the end of the stated term, as is true with respect to positions on the Public Utility Commission. 66 Pa. C. S. §301(a).

Moreover, because our reading of the 90-day time limit as mandatory results in a forfeiture of appointing power when the time limit is breached, it is well that such a sanction is limited only to instances where a vacancy actually exists, not where the position continues to be occupied by an incumbent previously confirmed by the Senate.

We conclude that the constitutional time limit, here affirmed by us as mandatory upon the governor, is not applicable where the existence of a vacancy is precluded by an incumbent lawfully holding over.[8]

### 4. Unripeness of Controversy

Among the appointive positions involved in this case, is there no office which has been vacant for more

---

[8] On this point we must express an interpretive reservation. Given certain circumstances the doctrine of *Commonwealth v. Wise, supra,* could possibly apply to appointive bodies so that, on a multi-member body, the holdover provision would not operate where the number of qualified successors is less than the number of expired terms. The problem would be whether the absence of a qualified successor can be related to one particular expired term among several.

than 90 days, so that there is no case or controversy ripe for decision?

Respondent contends that, applying the concept of vacancy in office which we have adopted above, only a very few of the offices embraced in the petition for review are presently vacant, and those few had not been vacant for 90 days on July 29, 1980, the day respondent filed the motion for summary judgment. Respondent therefore claims that the action is "moot". (As respondent appears to recognize, this claim more accurately should be treated as one concerning prematurity or ripeness.)

We are unable to agree. First, respondent's brief cites no basis in law for applying the holdover doctrine so as to treat the 90-day time limit as inapplicable to the expired Pennsylvania Turnpike Commission position.[9] However, aside from that, we secondly note that respondent's affidavit acknowledges that at least two state hospital or medical center board posi-

Such a possibility is illustrated by the affidavits here as to the Pennsylvania Securities Commission, where the terms of three positions all expired together on January 16, 1979 and only one successor has been appointed and confirmed, two other nominations by the governor having been recalled. On this record, such a question cannot be resolved. For example, it depends upon whether the governor by his appointment action (as distinguished from an election process) may specifically relate a named successor to a named predecessor, or whether the reappointment of a predecessor for a new term is involved.

[9] Section 4 of the Act of May 21, 1937, P.L. 774, *as amended*, 36 P.S. §652d, governs Turnpike Commission appointments, which are not subject to the Administrative Code of 1929, particularly because the Commission is apart from the Commonwealth. *See Specter v. Turnpike Commission*, 462 Pa. 474, 341 A.2d 481 (1975). With respect to the initial staggered appointments to that Commission, that section accords terms of four, six, eight and ten years "and until their respective successors shall be duly appointed and qualified," but, as to appointments thereafter, the same section merely states that "their successors shall each be appointed for a term of ten

tions are indisputably vacant, although those vacancies had not persisted for 90 days by the time the motion for summary judgment was filed. Of course, those 90-day periods have not only now expired but, without a doubt, much more than 90 days will have expired at the point where a decision in this case takes effect. Of course, the Governor may well have filled those particular positions by that time, but other positions among the 171 offices named in the petition for review will undoubtedly have become vacant before these proceedings end. Those undeniable prospects, as petitioner's brief points out, simply confirm that the important issue in this case is one clearly capable of replication. Given that characteristic, our duty is to resolve the matter, not avoid it. *In Re: Gross,* 476 Pa. 203, 382 A.2d 116 (1978).

### 5. Executive Options Not to Appoint

In addition to our conclusion here and in *Zemprelli I, supra* at 56-60, 407 A.2d at 108, 110, that the 90-day time limit is mandatory upon the Governor when he exercises his power to fill vacancies, is the constitutional section also mandatory in the sense that it requires the Governor to act and deprives him of an executive option to leave a position unfilled?

In *Zemprelli I,* we said:

The wording of the constitutional provision, if mandatory, clearly does not require the Gov-

---

years, except that any person appointed to fill a vacancy shall serve only for the unexpired term, and any member of the commission shall be eligible for reappointment." Of course, there is an arguable implication that the holdover provision expressly appended to the initial staggered terms was intended by the legislature to be read also into the declaration as to regular ten-year terms. We certainly do not make any adjudication with respect to any incumbency there currently holding over. However, that one position alone presents a foundation for a litigatable case and controversy here.

ernor to act but only to act in a timely fashion, if he does choose to act; its terms do not disturb the executive prerogative to leave an administrative position unfilled if he chooses. Hence, the court is not called upon to command a nomination to this or that position. . . .

*Supra* at 52, 407 A.2d at 107.

The unavoidable nature of that conclusion becomes clear if we simply visualize application of the point on which we agree with petitioner—namely, that the Governor's power to appoint is viable only during the 90-day period set by the constitution, and "not thereafter." If the passage is read as requiring the Governor to fill all vacancies, mandamus could not lie to compel the Governor to exercise his appointing power until the respective 90-day period expires, and, at that juncture, the constitution tells us that the power shall "not thereafter" be exercised. Thus, as far as this particular passage is concerned, the spur to the Governor is the sanction of disability to appoint, not the prospect of compulsion. In Article IV, §8(a), the word "shall" is coupled with reference to the Governor being "authorized by law to appoint," not required by law to appoint—the verb referring to power rather than duty. In subsection (b) immediately following, "shall" has like import, mandating timeliness only.

Petitioner confronts us with the serious prospect that some governor, by choosing to leave vacancies unfilled, could make the attainment of a required quorum impossible or otherwise render ineffective the accomplishment of public programs which have been commanded by law; petitioner's significant example is the important regulatory program of the Public Utility Commission.

Our inability to find in the constitutional provision before us a general mandate that all positions must be

assiduously filled does not preclude the possibility that an executive may well be liable to compulsion to execute a program, but upon a legal basis apart from the constitutional provision at issue here. Precedent exists for compelling a governmental executive to act in various ways, so that his inaction cannot amount to an improper veto of programs which have been established and funded for important goals legislatively adopted. *See e.g., State Highway Commission of Missouri v. Volpe*, 479 F.2d 1099 (8th Cir. 1973), enjoining executive impoundment of legislatively-authorized highway funds.

With such alternative bases for assurance that public programs can be protected from executive inaction, there is no compulsion to read into the constitutional passage here a requirement that all offices on the public payroll must be kept occupied where the governor, in his executive responsibility, concludes that his duties can be accomplished without them. For example, the executive branch cannot be compelled to continue the operation of a particular state hospital. *See: Bell v. Thornburgh,* Pa. , 420 A.2d 443 (1980). Accordingly, to require that the Governor keep the board positions of a defunct hospital filled would be pointless and wasteful.

We therefore read the provision as mandatory only with respect to time.

### 6. Prospective Operation of Order

In *Zemprelli I,* we set forth the reasoning and authority which leads and supports us in concluding that any order or declaration in this case should operate only prospectively, from the date upon which our order becomes final and effective, beyond further appeal. *Supra* at 54-56, 407 A.2d at 107-8.

The sound criteria as to nonretroactivity, to which petitioner refers by citing *Chevron Oil Co. v. Huson,*

404 U.S. 97 (1971), are clearly fulfilled by the circumstances here: (1) this case involves an issue of first impression, the resolution of which has not been clearly foreshadowed; (2) retrospective application would not further the purpose of this constitutional section as we must read it, which is to deter governors, as well as senators, from undue delay in submitting and confirming appointments to office; and (3) retroactive operation would have the harsh and absurd result of *forcing* governmental offices to be left unfilled, in view of our unavoidable conclusion as to the constitutional wording which states that a governor's nominating power, after the time for its exercise has expired, is "not thereafter" to be exercised.

Accordingly, we will dismiss respondent's motion for summary judgment; we will grant petitioner's motion for summary judgment, but only to the extent described in this opinion.

## Order

And Now, this 16th day of December, 1980, upon consideration of the respective motions for summary judgment by petitioner and by respondent, respondent's motion for summary judgment is dismissed, and petitioner's motion for summary judgment is granted to the extent of the judgment hereby entered as follows:

1. The portion of Article IV, §8(b) of the Pennsylvania Constitution which provides that "[t]he Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy and not thereafter," is mandatory, in that:

(a) it requires that each governor, in order to exercise his appointing power, shall submit his nomination of a proper person to fill such a

vacancy to the Senate of Pennsylvania within the 90 days following the first day of such vacancy, and

(b)   it concomitantly prohibits the governor's appointing power with respect to the particular vacancy from being exercised after the expiration of that 90-day period.

2.   In applying the provisions of Article IV, §8(b) to each governor, "the first day" of each vacancy must be deemed to be a day not earlier than the first day of such vacancy as it occurs within the term of that governor.

3.   This order and judgment shall operate prospectively only, so that, with respect to any office under a governor's power of appointment subject to confirmation by the Senate of Pennsylvania, no period of 90 days under said Article IV, §8(b) shall commence earlier than the effective date of this order, *i.e.,* the date it becomes final after or beyond appeal as provided by law.

JUDGE WILLIAMS, JR. CONCURS IN RESULT ONLY.

———

CONCURRING AND DISSENTING OPINION BY JUDGE MACPHAIL:

I concur with the majority opinion except as to the issue covered in Part 5 thereof; that is, whether the language of Article IV, Section 8(b) *requires* the Governor to make appointments which he is authorized by law to make. Although I joined with the majority in *Zemprelli I,* I now feel that our language in that opinion to the effect that the constitutional amendment does not require the Governor to act to fill vacancies he does not choose to fill, is incorrect.

In concluding that the language in the amendment deals not with any compulsion upon the Governor to act where he does not choose to act, but rather upon

the limitation of time within which he must act if he does choose to act, the majority relies upon grammatical construction, the "statutory bind" of compelling the Governor to act where he cannot do so after the ninety day limitation has expired and the availability of alternative means to compel the Governor to act. Neither of the two cases cited by the majarity to support the availability of such alternative means of enforcement deal with the constitutional duty of a governor to make appointments to fill existing vacancies. The radical surgery performed by those who drafted the amendatory language in the first sentence of subsection (b) seems to me to indicate that a determined effort was being made to assure that vacancies would be filled *and* that they would be filled promptly. The traditional hedging between the Governor and the legislature over whose move was next with respect to gubernatorial appointments was sought to be avoided and to me the language plainly fulfills that purpose. If we fail to give mandatory meaning to the words "the governor shall fill vacancies," the executive branch of government will still be able to thwart the intent of the legislature which presumably acts for the people in determining how many persons shall serve on the various commissions and boards where the Governor has appointive power. The failure to appoint will automatically reduce the number of such persons.

Since I see no alternative means of compelling the Governor to act, I feel that this constitutional vehicle must be used and was intended for that purpose.

The fact that any legal remedy pursued to compel the Governor to act appears to be futile because it can't be instituted until ninety days have elapsed and the Governor is prohibited from acting thereafter should not deter us from holding that the governor has the duty to act. While legal remedies may be un-

available, I am persuaded that the duty imposed upon the Governor will be fulfilled as any other constitutional duty by those who are elected to the highest office in the Commonwealth. In those instances where there is a failure to perform that duty, I am likewise persuaded that the people will act as they have in the past where high officials fail to perform their constitutional duties.

I would grant summary judgment to the petitioners without the limitation imposed by the majority opinion.

President Judge CRUMLISH joins in this concurring and dissenting opinion.