Edward P. Zemprelli et al., Petitioners *v.* Dick Thornburgh, Governor et al., Respondents.

Argued October 5, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*William G. Dade,* Assistant Counsel to the Senate Democratic Floor Leader, with him *Michael T. Mc-Carthy,* Chief Counsel to the Senate Democratic Floor Leader, for petitioners.

*Robert B. Hoffman,* Deputy Attorney General, with him *David H. Allhouse,* Deputy Attorney General, *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 25, 1983:

State Senators Edward P. Zemprelli, Eugene F. Scanlon, James E. Ross and Robert J. Mellow (petitioners or senators) seek, by an action in the nature of

*quo warranto,* to oust certain state officials from office (respondents) and further to enjoin respondent, the Honorable Richard L. Thornburgh, Governor of the Commonwealth, from nominating anyone to succeed these officials. Respondents have filed a preliminary objection in the nature of a demurrer. We overrule the objection.

The Governor submitted the names of respondent officials, Robert K. Bloom, William E. Andrews, Donald L. Smith and Syed R. Ali-Zaidi, to fill certain governmental vacancies. The Pennsylvania Senate, by roll-call vote, confirmed their nominations, and they subsequently took office.[1] During the vote in the Senate, the petitioners protested the nominations and voted not to confirm respondent officials.

The senators challenge, by an action in the nature of *quo warranto,* the officials' right to hold office. "The writ of quo warranto is as ancient as the common law itself. . . ."[2] *Commonwealth ex rel. v. Wherry,* 302 Pa. 134, 137, 156 A. 846, 847 (1930). In this Commonwealth, it was "the sole and exclusive remedy to try title or right to public office," *DeFranco v. Belardino,* 448 Pa. 234, 236, 292 A.2d 299, 300 (1972),[3] and has its genesis in the criminal law.

Historically, it was a criminal proceeding on information and resulted in the imposition of fines and sentences of imprisonment. While the

---

[1] At the commencement of this action, the respondents held the following offices: Bloom, Secretary of the Department of Revenue; Andrews, member of the Pennsylvania Minority Business Development Authority; Smith, member of the Hazardous Substances Transportation Board; and Ali-Zaidi, member of the Board of State College and University Directors.

[2] For a discussion on *quo warranto* actions, *see* Comment, *Quo Warranto in Pennsylvania; Old Standards and New Developments,* 80 Dick. L. Rev. 218 (1976).

[3] *See League of Women Voters v. Lower Merion Township Board of Commissioners,* 451 Pa. 26, 301 A.2d 797 (1973).

writ soon lost its criminal character and applied
to the mere purpose of trying the civil rights in-
volved, it retained the criminal form.
*Commonwealth ex rel. Schermer v. Franek*, 311 Pa.
341, 344, 166 A. 878, 879 (1933). In support of this
challenge to respondents' right to hold office, petition-
ers argue that these nominations and ensuing appoint-
ments were made in violation of Article IV, §8(b) of
the Pennsylvania Constitution and are thus unlawful.

The respondents have filed a preliminary objection
in the nature of a demurrer, challenging these sena-
tors' standing to maintain this action. In arguing that
the senators lack standing, the respondents contend
that the only alleged injury was to their right to vote
on the nominations and that, because the senators have
exercised this right, they have suffered no injury. The
senators reason that they have both a right and a *duty*
to vote despite their belief that these nominations were
constitutionally infirm and that they were injured by
this compulsion to vote on these submissions.

In ruling on a preliminary objection in the nature
of a demurrer, a court must accept all well-pleaded al-
legations as fact. *Independent Association of Pennsyl-
vania Liquor Control Board Employees v. Common-
wealth*, 35 Pa. Commonwealth Ct. 133, 384 A.2d 1367
(1978). A demurrer will be sustained only when it ap-
pears, with certainty, that the law permits no recovery
under the allegations pleaded, *Adamson v. Common-
wealth*, 49 Pa. Commonwealth Ct. 54, 410 A.2d 392
(1980), and the objection must be overruled if the al-
legations state a cause of action under any theory of
law. *Sinwell v. Pennsylvania Board of Probation and
Parole*, 46 Pa. Commonwealth Ct. 429, 406 A.2d 597
(1979). Thus, a court must decide any question of law
which is determinative as to the proper disposition of
a demurrer. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d
833 (1976).

Article IV, §8(b), upon which petitioners rely for their assertion that these nominations were unconstitutionally submitted, provides in pertinent part:

> The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy *and not thereafter.* The Senate shall act on each executive nomination within 25 legislative days of its submission. (Emphasis added.)

In *Zemprelli v. Thornburgh,* 47 Pa. Commonwealth Ct. 43, 407 A.2d 102 (1979) *(Zemprelli I),* we held that this constitutional provision mandates that the Governor submit nominations within the ninety-day period subsequent to the occurrence of a vacancy. In so holding, this Court wrote:

> [A]lthough both mandatory and directory provisions are meant to be followed, a distinction arises as to the effect of non-compliance because failure to follow a directory provision does not invalidate the action but disobedience of a mandatory clause renders the action illegal and void.

*Id.* at 56, 407 A.2d at 108. In *Zemprelli I,* this Court further concluded that the requirement that the Senate act within twenty-five days of the nomination also created a *mandatory* duty in the Senate to vote, writing that, "[b]ecause expiration of that time limit without Senate action has the positive result of placing the nominee into office, its mandatory nature is inescapable." *Id.* at 59, 407 A.2d at 110. Having concluded that the duty to "advise and consent," *i.e.,* vote, was mandatory, we concluded that the petitioner, an individual senator, had a legal interest in seeing that the Governor submitted nominations within this ninety-day period and thus had standing to maintain the action. *Id.* at 60, 407 A.2d at 110.

In *Zemprelli v. Thornburgh,* 55 Pa. Commonwealth Ct. 330, 423 A.2d 1072 (1980) *(Zemprelli II),* we further interpreted this constitutional provision to be mandatory *only as to time.*

> Our inability to find in the constitutional provision before us a general mandate that all positions must be assiduously filled does not preclude the possibility that an executive may well be liable to compulsion to execute a program, but upon a legal basis apart from the constitutional provision at issue here. . . .
>
> . . . .
>
> We therefore read the provision as mandatory only with respect to time.

*Id.* at 346-47, 423 A.2d at 1080. Thus, this provision itself places no compulsion upon the Governor to appoint but, if he does so, it must be done within this constitutionally-ordained period.

The senators have alleged, and we must accept this allegation as true, *Independent Association of Pennsylvania Liquor Control Board Employees,* that these nominations were submitted after the constitutionally-mandated ninety-day period. *Zemprelli I.* Thus, we must now decide whether, having fulfilled their mandatory duty to vote on these nominations, *Zemprelli I,* these individual senators now have standing to challenge these submissions. Respondents assert that, once having exercised their right and performed their duty to vote, petitioners have suffered no injury, nor do they have a further legal interest since such interest was extinguished upon the exercise of their vote. We disagree.

Standing has been defined by the United States Supreme Court as

> that "personal stake in the outcome of the controversy," Baker v. Carr, 369 U.S. 186, 204

(1962), that insures that "the dispute sought to be adjudicated will be presented in an adversary contest and in a form historically viewed as capable of judicial resolution." Flast v. Cohen, 392 U.S. 83, 101 (1968), and Sierra Club v. Morton, 405 U.S. 727, 732 (1972)....

*Roe v. Wade,* 410 U.S. 113, 123 (1973). Our Supreme Court, in determining the issue of standing in *quo warranto* actions, has limited the finding of a "personal stake" to legal representatives of the public as a whole, the District Attorney or Attorney General, and to those private individuals who have a "special interest as distinguished from the interest of the public generally." *Commonwealth ex rel. Specter v. Martin,* 426 Pa. 102, 108, 232 A.2d 729, 733 (1967). Here, we conclude that these senators have a grave stake in assuring that nominations submitted to the Senate will pass constitutional muster.

Under Section 8 of Article IV, each state senator has a constitutional *duty* to vote on executive nominations for appointive offices. *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 363 A.2d 876 (1976).[4] This constitutional duty is implicit in the Article IV, Section 8 mandate that "[t]he Senate shall act on each executive nomination. . . ." A duty to vote on executive nominations is also imposed by the Rules of the Senate of Pennsylvania.[5] Senate Rule XXII, §3, provides as follows:

> *Every Senator shall be present within the Senate Chamber during the sessions of the Sen-*

---

[4] This is in accord with our Supreme Court's holding, in *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237 (1973), that each individual state senator has a constitutional right to vote on executive nominations.

[5] The Rules of the Senate are published in the Pennsylvania Code and, hence, we are required to, and do, take judicial notice of them in the case at hand. 45 Pa. C. S. §506.

*ate,* unless duly excused or necessarily prevented, *and shall be recorded as voting on each question stated from the Chair which requires a roll call vote* unless excused by the Senate. *The refusal of any Senator to vote shall be deemed a contempt* unless he be excused by the Senate or unless he has a direct personal or pecuniary interest in connection with the pending question. (Emphasis added.)

104 Pa. Code §11.22(c). This duty is unqualified[6] and, hence, must be performed regardless of whether the nominations were, as alleged, unconstitutionally submitted. A refusal to so act, as indicated above, invites a citation for contempt. Thus, a state senator is compelled to participate in roll-call votes on executive nominations, no matter how justifiably he may contest the constitutionality of the submission of the nominations or the vote necessitated thereby. Thus, we disagree with respondents' assertion that the exercise of the vote extinguishes these senators' legal interest in this controversy. A compulsion to vote on executive nominations conveys upon these individual senators an interest greater than,[7] and distinguishable from, the general citizenry of this Commonwealth.[8] In *Zemprelli I,* we held, and we now reiterate:

---

[6] With certain exceptions not here relevant. *See* Senate Rule XXII, §3.

[7] We also note, without deciding, that the submission of executive nominations may substantially interfere with the normal course of Senate business, *see* Senate Rule XXX, §§5, 6, 104 Pa. Code §11.30 (c), (d), and may also provide a basis for finding that a senator's interest in the constitutionality of executive nominations is substantially different from that of the public as a whole.

[8] Due to our holding that a senator's duty to vote on executive nominations gives him standing to maintain this action, we find it unnecessary to address the respondents' argument that a senator's right to vote on executive nominations is not adversely affected by an unconstitutional delay in their submission.

From the conclusion that the provision is mandatory, [ninety-day submission period] it follows that petitioner's right to have nominations submitted within the stated period, and not thereafter, confers a legal interest and thereby gives petitioner standing herein.

*Zemprelli I* at 60, 407 A.2d at 110. To hold otherwise would, in this case, allow the Governor to circumvent this provision. As we further noted in *Zemprelli I*, this provision was amended to avoid just such a result.

The proposing body here was a special committee to study confirmation procedures. . . . From examination of the history of recess appointments . . . and other problems, the report proceeded to note that the former language of Article IV, §8 had been accompanied by "indefensible delay by the Senate, *circumvention of the constitutional requirement by the Governor* and excessive political maneuvering by the Senate and the Governor," thus subjecting both branches to criticism. (Emphasis added.)

*Id.* at 59, 407 A.2d at 109.

The senators have standing; thus, respondents' objection is overruled.

## ORDER

The preliminary objection of the respondents is hereby overruled.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

While there is much that can and perhaps should be said about the present confirmation process which has interfered with and even endangered the normal functions of our state government, the sole legal issue presented here is whether a state senator who has cast his vote in the confirmation process may now attack

the validity of those proceedings to oust those office-holders who have been confirmed on the sole basis that the appointment was untimely made, hence, unconstitutional.

The majority opinion says (slip opinion, page 6) that in determining standing, it must be determined that the complaining party has a *special interest* as distinguished from the interest of the public generally. Our Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269,    (1975) said, "[I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." (Footnote omitted.) Yet, that is precisely the position of the Petitioners here. They may have a "grave stake in assuring that nominations submitted to the Senate will pass constitutional muster" as the majority says (slip opinion, page 6), but that interest is no "graver" or any different from that of all of the citizens of the Commonwealth in procuring obedience to the law.

Nor do I perceive that petitioners have suffered any injury by reason of the confirmation of these office-holders. The Petitioner's sole allegation in that respect is that they have a duty to advise and consent which has been somehow impaired. I submit that that duty was not impaired—they voted and the appointments were confirmed. The process was complete.

I find the argument that the Petitioners were compelled to vote for if they failed to do so they would be cited for contempt, lacking substantial merit. If the appointments were clearly unconstitutional, the Senate could have refused to vote at all. If the Senate chose to vote, the Petitioners could have refused to vote. I can think of no better defense to a contempt citation than that the subject matter upon which a vote is to be taken, is unconstitutional. A maxim of the law

is that one is not ordinarily required to do a futile thing.

Finally, if the instant suit is successful, the very harm predicted in the concurring and dissenting opinion in *Zemprelli II*, will result. The vacancies *cannot* be filled and the citizens will be without the services of office-holders who, at least according to the Governor and a majority of the Senate, were found to be qualified. I make no judgment as to who is primarily or even indirectly responsible for such a situation. As I have said, we are to determine here whether the Petitioners have standing to bring this action, nothing more.

I would sustain the preliminary objection.